IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| PERRY T. HURLEY, | ) | |
|     Petitioner, | ) | Civil Action No. 7:20CV246 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN STREEVAL, | ) | By: Norman K. Moon |
|     Respondent. | ) | United States District Judge |

    Perry T. Hurley, a federal inmate proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a motion to dismiss the petition or, in the alternative, motion for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. (Dkt. No. 3.) In it, respondent moves to dismiss the petition in its entirety, arguing that the petition fails to state a claim upon which relief may be granted or, alternatively, that he is entitled to judgment as a matter of law.

    For the reasons set forth herein, I conclude that Hurley's § 2241 petition fails to demonstrate a genuine issue of material fact that respondent is entitled to judgment as a matter of law. I will therefore grant respondent's motion, dismiss the petition, and enter judgment in respondent's favor.

I.

    Hurley is currently incarcerated at the United States Penitentiary ("USP") in Lee County, Virginia. He alleges that he was denied due process in connection with disciplinary proceedings held while he was incarcerated at Federal Correctional Institution ("FCI") Otisville, in Otisville, New York. This case concerns Incident Report ("IR") No. 3268474, which was heard before a disciplinary hearing officer ("DHO") on June 27, 2019. Hurley seeks expungement of the IR from his record and restoration of his good conduct time ("GCT").

On June 17, 2019, Hurley was charged in IR No. 3268474 with fighting with another person. (Dkt. No. 4-1 ¶¶ 12–13; *id.* at 15.) According to the reporting officer:

> On Sunday, June 16, 2019, at approximately 5:37 pm, I observed inmate Hurley, Perry, #08918-027, and [another inmate] punching each other with closed fists about the head and upper torso in front of the dining hall. Both inmates were ordered to the ground, restraints were applied, and they were escorted to the Special Housing Unit without further incident.

(*Id.* at 15.)

A hearing before a DHO was held on June 27, 2019. (*Id.* at 25.) The DHO found that Hurley had committed the offense of fighting with another person. (*Id.*) The DHO imposed, among other sanctions, the penalty of disallowance of 27 days GCT. (*Id.* at 26)

As I explain below, Hurley received all the process which he was due during the course of the disciplinary proceedings at issue, and the DHO's decision is supported by some evidence in the record. That is all the law demands. Therefore, Hurley has not established a due process violation, and respondent is entitled to judgment as a matter of law.

II.

The standard for review on a motion for summary judgment is well-settled. The court should award summary judgment only when the pleadings, responses to discovery, and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.'*, 475 U.S. 574, 586–87 (1986). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable party could return a verdict for the nonmoving party." *Id.*; *see also JKC*

*Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citation omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Prisoners may not be deprived of life, liberty, or property without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "To state a procedural due process violation, a [petitioner] must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Chestnut v. Lue*, No. 7:19-cv-00455, 2019 WL 6352656, at *3 (W.D. Va. Nov. 27, 2019) (quoting *Prieto*, 780 F.3d at 248). "It is well established that the loss of earned good time credits . . . is an interest sufficient to invoke the protections of due process." *Id.* (citing *Wolff*, 418 U.S. at 439); *see also Moses v. Bledsoe*, No. 1:03 CV 149, 2004 WL 3317657, at *2 (N.D. W. Va. Sept. 28, 2004) ("An inmate has a liberty interest in good time credit and no state may constitutionally deprive him of that good time credit without due process of law."). The Supreme Court described the process due a prisoner accused of a disciplinary infraction in *Wolff* as follows: (1) the inmate must receive written notice of the charges; (2) he must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) there must be a written statement by the factfinder as to the evidence relied on and the reasons for the decision. *Massengale v. Streeval*, No. 7:19-cv-543, 2020 WL 4227559, at *4 (W.D. Va. July 23, 2020) (citing *Wolff*, 418 U.S. at 564); *Chestnut*, 2019 WL 6352656, at *3 (same). The Supreme Court further held that "revocation of good time does not comport with the minimum requirements of

procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (quoting *Wolff*, 418 U.S. at 558) (internal citation omitted); *see also Chestnut*, 2019 WL 6352656, at *3 (noting that there was "'some evidence' supporting the DHO's conclusions, all that is required" (quoting *Hill*, 472 U.S. at 454, 456)). "'Some evidence' is defined as 'any evidence in the record that could support the conclusion reached.'" *Moses*, 2004 WL 3317657, at *3 (quoting *Hill*, 472 U.S. at 455–56). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *see also Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quoting *Hill*, 472 U.S. at 455-56). "As long as a hearing officer's decision is supported by some evidence and the requirements of *Wolff* have been met, the decision cannot be disturbed on judicial review." *Massengale*, 2020 WL 4227559, at *4.[1]

Hurley argues that he was deprived of GCT without due process of law as required by *Wolff* and in violation of Bureau of Prisons ("BOP") policies. (Dkt. No. 1 at 6-7.) First, he alleges that he was served an untimely IR in violation of BOP policies and procedures. (*Id.* at 6.) Second, Hurley claims that the DHO failed to consider his statements and evidence, failed to ensure that proper policies and procedures were followed, and hindered Hurley's ability to have a fair and impartial hearing. (*Id.* at 7.) Hurley seeks expungement of the IR and restoration of his GCT. (*Id.* at 8.)

---

[1] BOP regulations state that: "The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." *Moses*, 2004 WL 3317657, at *9; *see also Smith v. Bureau of Prisons*, No. 7:03CV00662, 2004 WL 3397938, at *2 (W.D. Va. Oct. 22, 2004) (noting that "greater weight of the evidence" is "the standard employed in prison disciplinary hearings when conflicting evidence is presented"), *aff'd*, 128 F. App'x 342 (4th Cir. 2005); 28 C.F.R. § 541.8(f) ("The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.").

The BOP's Administrative Remedy Procedure provides a three-level appeal process through which an inmate may seek formal review of issues that relate to any aspect of his confinement. 28 C.F.R. § 542.10. Ordinarily, an inmate must first attempt to informally resolve the issues with a staff member. 28 C.F.R. § 542.13(a). If informal resolution is not successful, the inmate may file a formal written complaint addressed to the Warden. *Id.* This complaint must be filed within twenty calendar days of the date on which the basis for the complaint occurred. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, that response may be appealed to the Regional Director within twenty calendar days of the date on which the Warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel within thirty calendar days of the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final administrative appeal. 28 C.F.R. § 542.15(a). Although § 2241 does not contain a statutory exhaustion requirement, courts require petitioners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See, e.g.*, *Rodriguez v. Ratledge*, 715 F. App'x 261, 265 (4th Cir. 2017) (unpublished) (per curiam) ("Prior to hearing a § 2241 petition, federal courts require exhaustion of alternative remedies, including administrative appeals."). Respondent agrees that Hurley has exhausted his administrative remedies with respect to his claim. (Dkt. No. 4 at 2.)

Hurley first argues that he received the IR, notifying him of the charge, beyond the twenty-four hours contemplated by BOP procedures. (Dkt. No. 1 at 6–7.) According to the Declaration of Michael Fulger, "[t]he IR was initially prepared on June 17, 2019. However, it was suspended for a re-write because the time of the incident in sections 5 and 11 of the initial incident report conflicted. The IR was re-written and served on Petitioner on June 18, 2019."

(Dkt. No. 4-1 ¶ 13; *see also id.* at 18.)[2] Although Hurley states in the petition that he received no notice of suspension or re-written IR, (Dkt. No. 1 at 7), he has provided no counter-affidavit or any other evidence to contradict the Fulger Declaration, despite being notified by the court that he had the right to do so, (Dkt. No. 5).

Moreover, while Hurley focuses his argument on the receipt of the IR beyond the usual twenty-four hours, contrary to BOP policy, (Dkt. No. 1 at 6–7), the BOP's violation of its own policies and procedures does not state a due process violation, *Bauer v. Warden FCI Williamsburg*, No. 6:16cv304, 2017 WL 318683, at *2 (D.S.C. Jan. 23, 2017) ("[T]he BOP's violations of its own policies do not amount to a due process violation."); *see also Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) ("It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay."). Thus, even accepting Hurley's claim that he "was served an untimely incident report . . .," (Dkt. No. 1 at 6), he would not be entitled to relief on that claim, *Schanck v. Zych*, No. 7:11CV00378, 2011 WL 5547132, at *3 (W.D. Va. Nov. 14, 2011) ("[P]etitioner did not have a due process interest in receiving an incident report within twenty-four hours of the fight." (citing *Smith*, 2004 WL 3397938, at *5 (noting that "there is no liberty interest under *Wolff* to receive incident reports within a certain period and that BOP regulations provide only that the reports should 'ordinarily' be given to an inmate within twenty-four hours of the incident"))). The record is clear that Hurley received a copy of the IR on June 18, 2019—the day after the report was dated (June 17, 2019), the day before the hearing before the UDC (June 19, 2019), and a week before the DHO hearing (June 27, 2019). (Dkt. No. 4-1 ¶¶ 13, 15, 18; *id.* at 15.) Hurley

---

[2] Fulger is the DHO who presided over Hurley's hearing. (Dkt. No. 4-1 ¶ 18.) Because the court has considered the Fulger Declaration and attachments in adjudicating the motion, the court will treat respondent's motion as one for summary judgment and has given appropriate notice. *See* Fed. R. Civ. P. 12(d); *see also* Notice (Dkt. No. 5).

does not dispute that he received the IR, providing notice of the charge against him, in advance of the UDC and DHO hearings. Therefore, he cannot claim to have been prejudiced by the one-day delay in receiving the IR. *See Consolidation Coal Co.*, 171 F.3d at 183; *Schanck*, 2011 WL 5547132, at *3 ("Petitioner fails to describe any prejudice of not receiving the report within twenty-four hours . . . .").

Next, Hurley contends that "when it came time for [him] to present evidence and be heard, DHO Fulger refused to consider [his] statements or [his] evidence." (Dkt. No. 1 at 7.) The evidence to which Hurley refers appears to be the IR itself.[3] He states: "Section 11 clearly shows [the] time frame violation and Section 20 shows U.D.C.'s recommendation for expungement do [sic] to said violation." (*Id.*) According to Hurley, the DHO "then made the statement that 'Lt's are always right,'" (*id.*), implying that the DHO was biased against him. Hurley concludes by asserting that "the DHO's refusal to respect or follow policy hindered [his] ability to have a fair and impartial hearing." (*Id.*)

The record contradicts Hurley's unsupported assertions. The DHO confirmed at the outset of the hearing that Hurley understood his rights, including the right to present witnesses and evidence. (Dkt. No. 4-1 at 26; *see also id.* at 21, 23.) During the DHO hearing, Hurley was given an opportunity to speak, which he did, and to present evidence and/or witnesses, which he did not. (*Id.* at 26.) The DHO report states:

> Your due process rights were read and reviewed by the DHO at the time of the hearing. You stated that you understood your rights, and had no documentary evidence to present. You requested no witnesses or staff representative. . . .
>
> . . .
>
> You admitted to the DHO that you committed the prohibited act of Fighting with another person, Code 201. The DHO took your testimony and the attached evidence into consideration in finding that you committed the prohibited act.

---

[3] Hurley does not identify any other evidence he wished to present. (Dkt. No. 1 at 7.)

(*Id.*)[4]  Thus, the DHO considered Hurley's statement. (*Id.*)  There would have been no need for Hurley to present the IR to the DHO because the DHO had reviewed it and, in fact, quoted it during the hearing. (*Id.* at 25–26.)  To the extent that Hurley wanted to point out the "time frame violation," (Dkt. No. 1 at 7), the DHO report reflects that:

> The DHO observed that the incident report was suspended on 6-17-2019 prior to the 24 hour time period having elapsed.  The incident report was re-written and served to you on 6-18-2019.  The DHO finds the timeliness to be appropriate.  You indicated that you were ready to proceed with the hearing.

(Dkt. No. 4-1 at 26.)  With respect to the UDC's recommendation for expungement due to the one-day delay, the UDC's recommendation is simply that, a recommendation.  Failure to follow a recommendation, which is the DHO's prerogative, hardly amounts to a due process violation.

Turning to Hurley's implicit claim that the DHO was biased, "[a]n inmate facing disciplinary charges has the right to an impartial decisionmaker." *Chestnut*, 2019 WL 6352656, at *5 (citing *Wolff*, 418 U.S. at 571).  However, prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings.  *Id.*; *see also Wolff*, 418 U.S. at 592 (Marshall, J., concurring) ("'[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case."); 28 C.F.R. § 541.8(b) ("The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.").  Hurley has not alleged that the DHO had any connection to the case prior to the hearing; rather, Hurley's implication appears to be based on the DHO's alleged comment that "Lt's are always right," (Dkt. No. 1 at 2, 7), and supposed failure to respect or follow policy statements, (*id.*).  However, Hurley has provided no evidence whatsoever of bias,

---

[4] During the hearing before the UDC, Hurley made the following statements: "Yes, we were fighting," "He disrespected me so I confronted him," and "We both hit each other . . . ." (Dkt. No. 4-1 at 15.)

8

or that the DHO even made the challenged statement, other his own bare assertion. That is not enough. *See Chestnut*, 2019 WL 6352656, at *5 ("In order for this court to find the DHO less than impartial, there must be some substantial countervailing reason to conclude that [he was] actually biased with respect to factual issues being adjudicated." (quoting *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (internal quotation marks omitted))); *id.* (rejecting claim that DHO's exclusion of witness or decision to credit officers over petitioner, without more, was evidence of partiality or bias (citing *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996))). Here, the DHO excluded no witnesses, as Hurley proffered none, and did not credit the reporting officer's account over Hurley's, because Hurley's admission comported with the officer's report. In short, Hurley has not demonstrated how the DHO "hindered [his] ability to have a fair and impartial hearing," (Dkt. No. 1 at 7), in any way.

Although Hurley does not appear to challenge the evidence on which the DHO based his decision, clearly "some evidence" in the record supports the DHO's conclusion. *See Chestnut*, 2019 WL 6352656, at *3 (noting that there was "'some evidence' supporting the DHO's conclusions, all that is required"); *Moses*, 2004 WL 3317657, at *3 (noting definition of "some evidence" as "any evidence in the record that could support the conclusion reached" (quoting *Hill*, 472 U.S. at 455–56)). The DHO considered the IR, staff memoranda, photographic evidence, inmate injury assessment reports, and Hurley's admission. (Dkt. No. 4-1 at 25–26.) He stated in his report:

> The DHO found that you committed the act of Fighting with another person, Code 201. In finding you committed this prohibited act, the DHO relied upon the reporting officer's statement that on June 16, 2019, at approximately 5:37 p.m., the writer stated that he observed you and [another inmate] punching each other with closed fists about the head and upper torso in front of the dining hall. Both inmates were ordered to the ground, restraints were applied, and escorted to the Special Housing Unit.

> You admitted to the DHO that you committed the prohibited act of Fighting with another person, Code 201. The DHO took your testimony and the attached evidence into consideration in finding that you committed the prohibited act.

(*Id.* at 26.) Again, Hurley has provided nothing to contradict or undermine the DHO's findings. *See Shahan v. Ormond*, No. 3:18CV200, 2018 WL 6681210, at *2 (E.D. Va. Dec. 19, 2018) ("When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or depositions, answers to interrogatories, and admissions on file, designate specifics facts showing that there is a genuine issue for trial." (quoting *Celotex Corp.*, 477 U.S. at 324) (internal quotation marks omitted), *aff'd*, 777 F. App'x 217 (4th Cir. 2019) (unpublished) (per curiam).

In addition, the DHO explained the reasons for the sanctions imposed, in compliance with *Wolff*:

> Fighting with another person, Code 201, reveals your willingness to break the rules for your own personal satisfaction. Misbehavior of his nature impairs staffs' [sic] ability to maintain a safe and secure facility and will not be tolerated. This type of behavior cannot be tolerated, because to do so would lessen staff's ability to maintain the security and good order of the institution. The sanctions were imposed to punish you for your misconduct, to place a significant impact on your future behavior, and to deter this type of behavior within a correctional institution. The sanction of Loss of Good Conduct time and disciplinary segregation was intended as punishment.

(Dkt. No. 4-1 at 26.)

Having found that Hurley received all the process to which he was entitled during the course of the disciplinary proceedings and that the DHO's decision is supported by some evidence in the record, I find that Hurley has failed to demonstrate a genuine issue of material fact and that respondent is entitled to judgment as a matter of law. *See Massengale*, 2020 WL 4227559, at *4 ("As long as a hearing officer's decision is supported by some evidence and the requirements of *Wolff* have been met, the decision cannot be disturbed on judicial review."). Accordingly, I will grant respondent's motion

to dismiss or, in the alternative, for summary judgment, dismiss Hurley's petition with prejudice, and direct that judgment be entered in respondent's favor.

An appropriate order will be entered.

**ENTER**: This 26th day of March, 2021

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE